## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**ALLEN M. RUSSELL** *also known as*                                **PETITIONER**
Russell Allen

**V.**                                                    **Case No. 3:23-cv-2964-TSL-BWR**

**BURL CAIN**, *Commissioner,*                                **RESPONDENTS**
*Mississippi Department of Corrections,*
and **LYNN FITCH**, *Attorney General of*
*the State of Mississippi*

## <u>REPORT AND RECOMMENDATION</u>

THIS MATTER is before the Court on Petitioner Allen M. Russell's (Petitioner) Petition [1] under 28 U.S.C. § 2254 for Writ of Habeas Corpus. Respondents Burl Cain and Lynn Fitch (collectively, Respondents) have filed an Answer [11]. Petitioner filed a Reply [15]. The undersigned recommends dismissing the Petition [1] with prejudice.

## I.    BACKGROUND

On March 21, 2019, a Forrest County grand jury indicted Petitioner on one count of possession of marijuana in an amount greater than 30 grams but less than 250 grams. Ex. [12-3] at 10. The Forrest County grand jury indicted Petitioner as a habitual offender under Miss. Code Ann. § 99-19-83 (§ 99-19-83). *Id.* This statute mandates a life without parole sentence for an individual upon their third felony conviction if one of the individual's previous two felony convictions was for a "crime of violence" listed in Miss. Code Ann. § 97-3-2 (§ 97-3-2). MISS. CODE ANN. § 99-19-83.

1

Petitioner was indicted as a "habitual offender" because he was previously convicted for burglary of a dwelling on two separate occasions in 2004. Ex. [12-3] at 10. Burglary of a dwelling is currently listed in § 97-3-2 as a violent crime. But in 2004, burglary of a dwelling was not listed in § 97-3-2 and would not trigger § 99-19-83's sentence enhancement unless the State proved actual violence during the commission of the burglary. *Moffite v. State*, 309 So. 3d 529, 539 (Miss. Ct. App. 2019).

On October 14, 2019, a Forrest County jury found Petitioner guilty of possession of marijuana in an amount greater than 30 grams but less than 250 grams. Ex. [12-3] at 76-78. The Forrest County circuit court sentenced Petitioner to life imprisonment without parole as a habitual offender. *Id.*; Ex. [12-5] at 120.

Through counsel, Petitioner appealed his conviction and sentence. *Russell v. State* (*Russell I*), 346 So. 3d 461 (Miss. Ct. App. 2021). On direct appeal, Petitioner argued "that his sentence constitutes cruel and unusual punishment and is grossly disproportionate to his felony conviction." *Id.* at 462. The Mississippi Court of Appeals affirmed Petitioner's conviction and sentence on May 11, 2021. *Id.*

Petitioner next petitioned for certiorari review to the Mississippi Supreme Court and the court granted review. *Russell v. State* (*Russell II*), 346 So. 3d 435 (Miss. 2022). The sole issue was whether Petitioner's "life sentence without the possibility of parole for possession of marijuana, as an habitual offender under Mississippi Code Section 99-19-83 (Rev. 2020), violates his Eighth Amendment right to be free from cruel and unusual punishment." *Id.* at 436. On June 16, 2022, the Mississippi Supreme Court upheld Petitioner's sentence. *Id.*

2

Petitioner then filed a Petition for Post-Conviction Relief (PCR Motion) in the Mississippi Supreme Court on March 28, 2023. Ex. [12-10] at 9-33. Petitioner raised one issue:

> whether a sentencing court violates the Ex Post Facto Clause by using a statute in effect at the time of sentencing rather than in effect at the time of the offense, if the statute creates a significant risk that the defendant will receive a longer sentence and the defendant, in fact, receives a longer sentence[.]

*Id.* at 16. The Mississippi Supreme Court held that Miss. Code Ann. §§ 99-39-21(1) & (3) barred the sole issue raised in Petitioner's PCR Motion and denied the PCR Motion on August 2, 2023. *Id.* at 1-2.

On September 27, 2023, Petitioner filed a Petition [1] for Writ of Habeas Corpus in this Court. This Petition [1] raises four grounds for relief:

I.    Fair Notice Is a Foundational Principle of Due Process.

II.   Mr. Russell has had his Constitutional Rights Violated by Being Subjected to Ex Post Facto Laws.

III.  The Habitual Offender Statute is at Least Ambiguous About When a Burglary Offense Applies, Thereby Triggering the Rule of Lenity.

IV.   The Mississippi Supreme Court Provides an "Unforeseeable and Retroactive Judicial Expansion" of the Habitual Offender Statute.

Pet. [1]. Petitioner's overarching argument is that § 99-19-83 violates Petitioner's due process rights because it does not "provide fair notice of what it prohibits and what punishment it prescribes for violations." Pet'r's Mem. [2] at 16-30. In support of this argument, Petitioner makes three underlying arguments: (1) § 99-19-83 is an unconstitutional ex post facto law; (2) § 99-19-83 is ambiguous and therefore the rule

of lenity applies to shield Petitioner; and (3) the Mississippi Supreme Court's interpretation of § 99-19-83 is an "unforeseeable and retroactive judicial expansion." *Id.* at 18-30.

Respondents argue that none of Petitioner's grounds for relief merit federal habeas relief. Answer [11] at 12-24. Respondents also argue that the Petition [1] is procedurally barred. *Id.* at 19-22.

## II.    DISCUSSION

1.    <u>All of Petitioner's grounds for relief are procedurally barred</u>

a.    *Applicable law*

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) governs federal habeas review. 28 U.S.C. § 2254. Federal habeas review is procedurally barred "[i]f a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (first citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); then *Harris v. Reed*, 489 U.S. 255, 262-63 (1989); and then *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977)). "[A] state procedural bar must have been firmly established and regularly followed by the time as of which it is to be applied in order for it to be valid in a given case." *Kunkle v. Dretke*, 352 F.3d 980, 989 (5th Cir. 2003) (internal quotation marks omitted) (quoting *Ford v. Georgia*, 498 U.S. 411, 424-25 (1991)).

A habeas petitioner may overcome the bar for a procedurally defaulted claim in two ways. First, the petitioner can overcome the procedural bar by showing cause

4

for the default and actual prejudice resulting from the alleged violation of federal law. *Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008) (quoting *Coleman*, 501 U.S. at 750). For a finding of cause, there "must be something *external* to the petitioner, something that cannot fairly be attributed to him" that prevented him from raising and discussing the claims as grounds for relief in state court. *Coleman*, 501 U.S. at 753 (emphasis in original). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003) (quoting *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996)).

Second, the petitioner can overcome the procedural bar by showing that a fundamental miscarriage of justice would result if the procedural bar were applied. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999). To make this showing, a petitioner must prove "as a factual matter, that he did not commit the crime of conviction." *Id.* (first quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995); then citing *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998)). The petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

b.    *Analysis*

Petitioner admits that he raised none of his current grounds for relief in his direct appeal of his conviction and sentence. Pet. [1] at 4-10. This Court's evaluation

5

of Petitioner's briefs on direct appeal and for certiorari review confirms this admission. Petitioner's only argument on direct appeal concerned the Eighth Amendment. Ex. [12-7] at 6-16; Ex. [12-9] at 2-9. In its Order denying Petitioner's PCR Motion, the Mississippi Supreme Court held that "[t]o the extent that any of [Petitioner]'s current arguments . . . are new, they are barred by [Miss Code Ann. §] 99-39-21(1)." Ex. [12-10] at 1. Because Petitioner admits that he raised every claim in his Petition [1] for the first time in his PCR Motion, the Mississippi Supreme Court's statement applies to all of Petitioner's claims raised here. *Id.*; Pet. [1] at 4-10.

The Court of Appeals for the Fifth Circuit has held that § 99-39-21(1) is an independent and adequate procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860-61 (5th Cir. 1997) (referring to Miss. Code Ann. § 99-39-21(1) as "an independent and adequate state procedural rule"). Petitioner argues that the Mississippi Supreme Court has not consistently applied the applicable procedural bar to claims like his and that this excepts his Petition [1] from the procedural bar. Pet'r's Mem. [2] at 15-16; Pet'r's Reply [15] at 26-27. "[T]he mere assertion of a constitutional right violation does not trigger the exception [to the procedural bar]. To find an exception . . . , there must at least appear to be some basis for the truth of the claim of a fundamental-constitutional-rights violation." *Evans v. State*, 115 So. 3d 879, 881 (Miss. Ct. App. 2013) (internal quotation marks and alterations omitted) (first quoting *Wicker v. State*, 16 So. 3d 706, 708 (Miss. Ct. App. 2009); then *Stovall v. State*, 873 So. 2d 1056, 1058 (Miss. Ct. App. 2004)). In Mississippi "four types of 'fundamental rights' have been expressly found to survive PCR procedural bars: (1) double jeopardy; (2) illegal

sentence; (3) denial of due process at sentencing; and (4) ex post facto claims." *Boyd v. State*, 155 So. 3d 914, 918 (Miss. Ct. App. 2014). Here, Petitioner brings a due process claim (unrelated to sentencing) and an ex post facto claim.[1]

Petitioner is correct that the Mississippi Supreme Court excepts plausible ex post facto claims from its procedural bar rules. *Bell v. State*, 123 So. 3d 924, 925 (Miss. 2013) (en banc). Regarding the due process argument, the undersigned's research does not reveal any, nor does Petitioner cite any, Mississippi Supreme Court cases where the court excused a procedurally barred PCR motion based on a fair notice due process argument like Petitioner's argument here.

In *Chism v. State* (*Chism I*), the Mississippi Supreme Court did not except a PCR motion asserting an ex post facto argument from the "waiver" procedural bar. Ex. [11-1]. The facts of *Chism I* are near identical to those here. *Id.* Adam Chism (Chism) was convicted of burglary of a dwelling before it was a per se violent crime under § 97-3-2. *Id.* at 1-2. Chism's burglary of a dwelling conviction was used to enhance his sentence on a third felony conviction he committed after Mississippi amended § 97-3-2 to include burglary of a dwelling as a per se violent crime.[2] *Id.* In his PCR motion, Chism, like Petitioner here,[3] argued that "the application of Section 97-3-2 (Rev. 2014) to his 2009 burglary-of-a-dwelling conviction is *ex post facto*, and thus illegal, because Section 97-3-2 was not enacted until 2014." *Id.* at 2. The

---

[1] As noted above, both claims are intertwined. *See supra* at pp. 3-4.
[2] Petitioner's second crime for purposes of the sentence enhancement was auto burglary. Ex. [11-1].
[3] Pet. [1] at 4-7.

7

Mississippi Supreme Court found that there was "no arguable basis" for Chism's ex post facto claim and denied Chism's petition as procedurally barred. *Id.* at 1-3.

The similarities between Petitioner here and Chism refute Petitioner's argument that his Petition [1] should be excepted from the applicable procedural bar. Both petitioners were convicted of burglary of a dwelling before § 97-3-2 included burglary of a dwelling as a per se violent crime that triggers a sentence enhancement under § 99-19-83. *Id.* These convictions caused both Petitioner here and Chism to receive enhanced sentences for crimes committed after Mississippi amended § 97-3-2 to include burglary of a dwelling as a per se violent crime. *Id.* Both cases merit the same outcome. *Chism I* shows that "there is no arguable basis for" Petitioner's ex post facto argument. *Id.* at 2-3; *Evans*, 115 So. 3d at 881. Taken together, *Chism I* and Fifth Circuit precedent further show that Mississippi courts do regularly apply procedural bars to petitions like the one here, where the alleged fundamental right violation is baseless. Ex. [11-1] at 2-3; *Stokes*, 123 F.3d at 860-61; *Evans*, 115 So. 3d at 881; *see also infra* at pp. 9-23. Petitioner's claims are meritless under *Chism I* and the Mississippi Supreme Court therefore expressly rejected each of Petitioner's grounds based on an independent and adequate state procedural rule. Petitioner's claims are procedurally barred from federal habeas review unless Petitioner can demonstrate the applicability of an exception. *Hughes*, 530 F.3d at 341.

Petitioner cannot demonstrate the applicability of an exception for any of his procedurally barred claims. Petitioner has not asserted that an external force prevented him from raising any of his grounds for relief at the trial level or on direct

appeal. Even if Petitioner had made such an assertion, Petitioner cannot show that, if he had raised these grounds, his outcome would have differed.

Nor has Petitioner brought forth any new, reliable evidence to establish that he is innocent of his crime of conviction. And Petitioner cannot establish, and does not argue, that, in light of any such evidence, no reasonable juror would have convicted him. Therefore, Petitioner's Petition [1] should be dismissed as procedurally barred.

2.    <u>The Petition [1] does not merit federal habeas relief</u>

Even though the undersigned finds the Petition [1] procedurally barred, the undersigned will review the Petition [1] on its merits in an exercise of caution.

a.    *Applicable law*

When addressing arguments that a state court reviewed on the merits, the focus in a federal habeas proceeding is not whether there was an error in applying state law but is instead whether there has been a denial of rights protected by the Constitution. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (first citing 28 U.S.C. § 2241; then *Rose v. Hodges*, 423 U.S. 19, 21 (1975)). Accordingly, under the AEDPA, a petitioner may not obtain federal habeas relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C.

§ 2254; *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012) (quoting § 2254(d));
*Brown v. Payton*, 544 U.S. 133, 141 (2005).

Review under the AEDPA is "highly deferential" to the state court's decision.
*Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*,
521 U.S. 320, 333 n.7 (1997)). The AEDPA's intentionally difficult standard "stops
short of imposing a complete bar on federal court relitigation of claims already
rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing
*Felker v. Turpin*, 518 U.S. 651, 664 (1996)). AEDPA review exists only to "guard
against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*,
575 U.S. 312, 316 (2015) (quoting *Harrington*, 562 U.S. at 102-03). "If this standard
is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

When reviewing a § 2254 petition, the federal court looks to the state court's
"last reasoned opinion." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012). If there is no
last reasoned opinion on a petitioner's claim, then the federal court reviews that claim
*de novo*. *Panetti v. Davis*, 863 F.3d 366, 374-75 (5th Cir. 2017) (first citing *Cone v.
Bell*, 556 U.S. 449, 472 (2009); then *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir.
2014)).

b.    *Analysis*

The Petition [1] before the Court asserts four grounds for relief. Petitioner
explains that "[f]our principles undergird the constitutional requirement of fair
notice: the prohibition of *ex post facto* laws, the rule of lenity, the restraint against
unforeseeably expansive judicial constructions, and the right to not be subjected to

10

vague or unknowable requirements." Pet'r's Br. [2] at 13 (first citing *United States v. Lanier*, 520 U.S. 259, 266-67 (1997); then *United States v. Councilman*, 418 F.3d 67, 82-87 (1st Cir. 2005); and then *United States v. Hussein*, 351 F.3d 9, 14-16 (1st Cir. 2003)). While Petitioner submits a ground for relief based on "fair notice," Petitioner's other grounds for relief, related to ex post facto laws, the rule of lenity, and an unforeseeable and retroactive judicial expansion, support the fair notice argument. *Id.* at 13-30.

### i.    Ground two: violation of the right not to be subjected to ex post facto laws

Petitioner argues that he is entitled to federal habeas relief because his due process rights were violated by the characterization of his prior burglary of a dwelling conviction as a crime of violence for the purpose of determining his habitual offender status under § 99-19-83. Pet. [1] at 4-7. When Petitioner was convicted for burglary of a dwelling in 2004, burglary of a dwelling was not defined as a violent crime that would trigger application of § 99-19-83 unless the State proved actual violence during the burglary. *Moffite*, 309 So. 3d at 539. In 2014, Mississippi added burglary of a dwelling to the list of "per se" violent crimes that trigger § 99-19-83's application. *Id.* (quoting *Salter v. State*, 184 So. 3d 944, 950 (Miss. Ct. App. 2015)). Petitioner's argument is that Mississippi violated his right not to be subjected to ex post facto laws when Petitioner's "convictions for burglary were each classified as a 'crime of violence' at the time of his sentencing even though they were not at the time of commission." Pet. [1] at 4.

The Mississippi Court of Appeals briefly addressed the ex post facto law issue *sua sponte*[4] in *Russell I*. 346 So. 3d at 465-66. The court "recognized" a person's "fundamental right 'not to be subjected to ex post facto laws.'" *Id.* (quoting *Moffite*, 309 So. 3d at 539). The court explained that it has "found no constitutional violation where an enhanced sentence was enforced based on felonies committed before the passing of a habitual-offender statute." *Id.* at 466. It is true that "burglary of a dwelling was not considered a per se crime of violence at the time of [Petitioner]'s 2004 felony convictions." *Id.* Even so, "burglary of a dwelling was considered a per se crime of violence . . . at the time of [Petitioner]'s 2019 conviction for possession of a controlled substance and subsequent sentencing as a habitual offender." *Id.* Thus the court held there was no constitutional violation. *Id.*

Petitioner contends that the Mississippi Court of Appeals' argument is contrary to the United States Supreme Court's precedent on ex post facto laws. Pet'r's Br. [2] at 18-21. Petitioner's argument largely consists of citing and quoting generally applicable Supreme Court precedent on ex post facto laws. *Id.* In Petitioner's Reply, Petitioner principally relies on *Peugh v. United States*, 569 U.S. 530 (2013). Pet'r's Reply [15] at 13-14. The *Peugh* Court held that an ex post facto violation occurred when a defendant was sentenced under sentencing guidelines promulgated after he committed the criminal act and when the applicable guidelines provided a higher

---

[4] Petitioner did not raise the issue in his briefing on direct appeal. Ex. [12-7] at 6-16.

sentencing range than the guidelines in place when the defendant committed the criminal act. 569 U.S. at 533.

In support of the Mississippi Court of Appeals' position, Respondents look to *Chism v. Middlebrooks* (*Chism II*). No. 3:20-cv-432-DPJ-LGI, 2023 WL 5424820 (S.D. Miss. July 31, 2023), *R. & R. adopted*, 2023 WL 5418776 (S.D. Miss. Aug. 22, 2023). This case features the same petitioner, Adam Chism, discussed earlier and involves the disposition of Chism's federal habeas corpus petition. *Id.*; *see supra* at pp. 7-8.

In *Chism II*, this Court held that Chism "fail[ed] to make th[e] showing" that the Mississippi Supreme Court's opinion denying his ex post facto claim was contrary to, or involved an unreasonable application of, clearly established federal law. 2023 WL 5424820, at *7. The *Chism II* court seized on several United States Supreme Court quotes in its analysis. *Id.* For example, in *Gryger v. Burke*, the Court wrote that a "habitual criminal's" sentence "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." 334 U.S. 728, 732 (1948). And in *Nichols v. United States*, the Court stated that "[e]nhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes that are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction." 511 U.S. 738, 747 (1994). The *Nichols* Court further recognized that the Court "consistently has sustained repeat-offender laws as penalizing only the last offense committed by the defendant." *Id.* (quoting *Baldasar v. Illinois*, 446 U.S. 222,

13

232 (1980) (Powell, J., dissenting), *overruled by Nichols*, 511 U.S. 738). The *Chism II* court then cited Fifth Circuit precedent rejecting ex post facto challenges like Chism's. 2023 WL 5424820, at *6 (collecting cases). The undersigned's own research reveals that most federal circuit courts are aligned with the Fifth Circuit and Supreme Court's take on the matter.[5]

*Chism II*, the Supreme Court's precedent, and the overwhelming majority in the federal circuit courts, including the Fifth Circuit, persuades the undersigned that the Mississippi Court of Appeals' opinion on Petitioner's ex post facto argument was not clearly contrary to, or an unreasonable application of, federal law.

Petitioner makes several arguments to rebut this conclusion: (1) this Court should apply *Peugh* and find that § 99-19-83 is an ex post facto law; (2) the Supreme Court has regularly held that retroactive changes to a law that may increase an

---

[5] *See, e.g.*, *United States v. Forbes*, 16 F.3d 1294, 1302 (1st Cir. 1994) (citing *Covington v. Sullivan*, 823 F.2d 37, 39 (2d Cir. 1987)) ("*Gryger* thus recognized the legislature's authority to enact an enhanced penalty for future conduct preceded by a criminal conviction obtained prior to enactment of the enhanced penalty provision."); *Covington*, 823 F.2d at 39; *United States v. McCalla*, 38 F.3d 675, 680 (3d Cir. 1994) (first citing *Gryger*, 334 U.S. at 732; then *United States v. Arzate-Nunez*, 18 F.3d 730, 734 (9th Cir. 1994)) ("We hold . . . that because the violation . . . occurred subsequent to the effective date of the statutory amendment which provided for an enhanced punishment, there was no ex post facto violation. The date of [defendant]'s prior criminal conduct is not relevant for purposes of an ex post facto analysis here."); *Austin v. Murray*, 875 F.2d 314 (4th Cir. 1989) (unpublished table decision) (per curiam) (citing *Gryger*, 334 U.S. at 732); *Perkins v. Cabana*, 794 F.2d 168 (5th Cir. 1986) (per curiam); *United States v. Reese*, 71 F.3d 582, 587 (6th Cir. 1995) (first quoting *Gryger*, 334 U.S. at 732; then *United States v. Ilacqua*, 562 F.2d 399, 404 (6th Cir. 1977)); *United States v. Campbell*, 182 F.3d 923 (7th Cir. 1999) (unpublished table decision) (per curiam) (citing *Gryger*, 334 U.S. at 732); *United States v. Hardeman*, 704 F.3d 1266, 1268 (9th Cir. 2013) (first citing *Nichols*, 511 U.S. at 747; then *Gryger*, 334 U.S. at 732); *United States v. Springfield*, 337 F.3d 1175, 1178 (10th Cir. 2003) (citing *Gryger*, 334 U.S. at 732) ("[I]t has been settled law for more than half a century that there is no ex post facto problem in using a prior conviction to enhance a sentence, so long as the offense for which the sentence is being imposed was committed after the effective date of the statutory provision setting forth the conditions for enhancement."); *United States v. Glover*, 153 F.3d 749, 757-58 (D.C. Cir. 1998) (citing *Arzate-Nunez*, 18 F.3d at 733).

individual's time served on a sentence violate the ex post facto clause; (3) the factual differences between Chism's case and Petitioner here calls for a different result here; and (4) *Gryger* is distinguishable and overruled. Pet'r's Reply [15] at 13-25.

First, *Peugh* is distinguishable. *Peugh* saw the Court hold that a state court violated a criminal defendant's ex post facto rights when it sentenced that defendant using harsher sentencing guidelines promulgated after the defendant committed the criminal act rather than the more lenient guidelines in effect when the defendant committed the criminal act. 569 U.S. at 533. The application of the sentencing guidelines promulgated after the defendant's criminal act in *Peugh* was a "retrospective increase in the measure of punishment." *Id.* at 545. Here, the increase in the measure of punishment is prospective. *Gryger* and *Nichols* are clear that habitual offender statutes do not "change the penalty imposed for the earlier conviction," they only "stiffen [the] penalty for the latest crime." *Nichols*, 511 U.S. at 747; *Gryger*, 334 U.S. at 732.

This is also why Petitioner's second argument is unpersuasive. Petitioner relies on *Weaver v. Graham*, 450 U.S. 24 (1981) for the proposition that "retroactive changes that could lengthen the time served on a sentence f[a]ll within the rubric of 'punishment' and thus also f[a]ll within the ambit of the Ex Post Facto Clauses." Pet'r's Reply [15] at 14-16.

*Weaver* is distinguishable. In *Weaver*, the Court faced Florida's statutory alteration in how the State calculated gain-time deductions. 450 U.S. at 26. Gain-time credits granted a prisoner a deduction in their prison sentence if the prisoner

15

exhibited "good conduct." *Id.* After the date of Hoyt Weaver's (Weaver) crime and sentencing, Florida "enacted a new formula for monthly gain-time deductions." *Id.* This alteration "reduce[d] the number of monthly gain-time credits available to an inmate who abide[d] by prison rules." *Id.* at 33. Florida applied the statute to Weaver even though it was not enacted until after he was incarcerated. *Id.* at 27. The Court found that the statutory alteration "lengthen[ed] the period that someone in petitioner's position must spend in prison" and invalidated it, as applied to Weaver, as an ex post facto law. *Id.* at 33-36.

The *Weaver* statute increased Weaver's penalty for his earlier crime by reducing Weaver's "opportunity to shorten his time in prison simply through good conduct." *Id.* Unlike the statute in *Weaver*, the statute here only increases the penalty for Petitioner's latest crime, it does not touch Petitioner's earlier crimes. *Nichols*, 511 U.S. at 747; *Gryger*, 334 U.S. at 732; *Perkins*, 794 F.2d at 169.

Third, Petitioner claims that Chism's case is materially distinguishable from the case here. Petitioner states that *Chism I & II* are distinguishable because Chism's "latest crime [of burglary of a dwelling] was committed *after* Section 99-19-83 was amended in 2014 to incorporate by reference Section 97-3-2's definition of 'crime of violence.'" Pet'r's Reply [15] at 20 (emphasis in original) (quoting *Chism I*, Ex. [11-1] at 2). Petitioner argues that the fact that Petitioner's "arrests for burglary occurred *before* [burglary of a dwelling] was classified as a 'crime of violence'" sets Petitioner's case apart from Chism's. *Id.* (emphasis in original) (citing *Russell II*, 346 So. 3d at 459).

16

Petitioner does not explain how the difference in the third crime each petitioner committed distinguishes *Chism I & II*. Just because Chism's third crime was burglary of a dwelling and Petitioner's third crime was possession of marijuana does not mean the cases should have a different outcome on the ex post facto issue. In all material regards, the two cases are analogous. Petitioner's latest crime was "committed *after* Section 99-19-83 was amended in 2014 to incorporate by reference Section 97-3-2's definition of 'crime of violence,'" like Chism's. Ex. [11-1] at 2 (emphasis in original).

Fourth, Petitioner attacks *Gryger*. 334 U.S. 728. Petitioner's argument is that *Gryger*, which is critical to this case's outcome and the outcome in *Chism II*, is distinguishable. Petitioner distinguishes *Gryger* on grounds that: (1) Petitioner is not bringing a constitutional challenge like the *Gryger* petitioner was; (2) *Gryger* is unclear on what charge(s) triggered the sentence enhancement; and (3) *Gryger* was not decided on ex post facto grounds. Pet'r's Reply [15] at 21-22. These arguments for *Gryger*'s inapplicability are unpersuasive. *Gryger*'s edict is crystal clear. The *Gryger* Court stated:

> Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive or subjects the petitioner to double jeopardy. The sentence as . . . habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.

334 U.S. at 732. It does not matter whether Petitioner is bringing a constitutional challenge or what charge(s) triggered the *Gryger* petitioner's sentence enhancement or on what grounds the Court decided *Gryger*. The opinion makes certain that habitual offender statutes *do not* retroactively punish crimes committed before the statute is enacted. They only punish the latest crime and increase the penalty for the latest crime. *Id.* This holds true regardless of the cases that *Gryger* cites. *Gryger* applies here.

The Court has never overruled *Gryger*, as Petitioner asserts. Pet'r's Reply [15] at 24-25. Petitioner does not cite any specific case, nor does the undersigned find one, that expressly, or impliedly, overruled *Gryger*. In fact, most of the federal circuit courts that have ruled similarly on this ex post facto issue have relied on *Gryger*. *See supra* at n.5.

For the reasons stated above, the Mississippi Court of Appeals' opinion on this ground for relief is not contrary to clearly established Supreme Court precedent and does not rely on an unreasonable determination of the facts. This ground should be dismissed.

### ii.    Ground three: lenity

In Petitioner's ground three, Petitioner argues that § 99-19-83 "does not contain 'clear and definite' language that would inform ordinary citizens about the scope of burglary retroactively applying as a crime of violence." Pet'r's Br. [2] at 22 (citing *United States v. Bass*, 404 U.S. 336, 347-48 (1971)). Petitioner continues, § 99-19-83 "does not explicitly define *when* (the version of the law governing the time of

18

commission of the offense or, in the alternative, the version that governs at the time of sentencing) controls the mandatory life without parole trigger." *Id.* at 23 (emphasis in original). Based on these alleged ambiguities, Petitioner urges the Court to apply the rule of lenity. *Id.* at 21-23. The Court reviews this ground for relief *de novo* since no state court opinion addressed it on the merits. *Panetti*, 863 F.3d at 374-75 (first citing *Cone*, 556 U.S. at 472; then *Hoffman*, 752 F.3d at 437).

"The rule of lenity provides that 'when [a] choice must be made between two readings of what conduct [the legislature] has made a crime, it is appropriate, before choosing the harsher alternative, to require that [the legislature] should have spoken in language that is clear and definite." *United States v. Orellana*, 405 F.3d 360, 370-71 (5th Cir. 2005) (quoting *Jones v. United States*, 529 U.S. 848, 849-50 (2000)). "'[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." *Maracich v. Spears*, 570 U.S. 48, 76 (2013) (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010)).

§ 99-19-83's language is unambiguous. The Court need not look to the rule of lenity. "[T]he starting point in every case involving construction of a statute is the language itself." *Watt v. Alaska*, 451 U.S. 259, 265 (1981) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell, J., concurring). § 99-19-83 states:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different

19

> times and who shall have been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment.

Under § 97-3-2(o), burglary of a dwelling is listed as a crime of violence. Taken together, both statutes are clear that any individual previously convicted of burglary of a dwelling on two separate occasions, like Petitioner, will have their sentence enhanced on a third felony conviction. MISS. CODE ANN. §§ 99-19-83 & 97-3-2. It is true that burglary of a dwelling did not become a statutorily defined crime of violence until after Petitioner was convicted of burglary of a dwelling. But this does not change that the two statutes above, by their plain meaning, put Petitioner on notice that a third felony conviction would subject him to life imprisonment.

History also supports the conclusion that there is no ambiguity in § 99-19-83. Going back to 1948, when the Court decided *Gryger*, the Court contemplated and understood a Pennsylvania habitual offender statute to apply much like Mississippi's does here. 334 U.S. at 732. And other courts around the country have confronted similar statutes and upheld their application in situations similar, if not identical, to Petitioner's here. *See supra* at n.5. There is no "grievous ambiguity" warranting application of the rule of lenity. *Maracich*, 570 U.S. at 76 (quoting *Barber*, 560 U.S. at 488). This ground should be dismissed.

### iii.  Ground four: unforeseeable and retroactive judicial expansion

In Petitioner's fourth ground for relief, Petitioner argues that the Mississippi Supreme Court's construction of § 99-19-83 provides an "unforeseeable and retroactive judicial expansion" of the statute. Pet'r's Br. [2] at 23-30. Although unclear, Petitioner seems to argue that the Mississippi Supreme Court's application of § 99-19-83 is impermissibly retroactive. *Id.*

In support of this position, Petitioner looks to the plain meaning of § 99-19-83, the presumption against retroactivity, and the expressio unius est exclusio alterius rule of statutory construction. *Id.* Petitioner first argues that "[t]here is no language in [§ 99-19-83] that explicitly states that there is a retroactive application." *Id.* at 25-27. Next, Petitioner looks to the presumption against retroactivity to argue that "a statute may not, 'absent clear congressional intent,' retroactively 'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Id.* at 27-28 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)). Last, Petitioner argues that "[t]he Mississippi Supreme Court disregards the doctrine of *expresio unius* by expanding its interpretation of [§ 99-19-83] to include convictions that were not present in the statute at the time the crimes were commissioned." *Id.* at 28-30. The Court reviews this ground for relief *de novo* since no state court opinion addressed it on the merits. *Panetti*, 863 F.3d at 374-75 (first citing *Cone*, 556 U.S. at 472; then *Hoffman*, 752 F.3d at 437).

Petitioner's first two arguments on plain meaning and the presumption against retroactivity rely on the mistaken assumption that § 99-19-83 is retroactive. The Fifth Circuit has held that § 99-19-83 is not retroactive when faced with the same arguments that Petitioner makes here. *Perkins*, 794 F.2d at 169; *see also Nichols*, 511 U.S. at 747; *Gryger*, 334 U.S. at 732. Thus Petitioner's plain meaning and presumption against retroactivity arguments fail.

As to the expresio unius argument, Petitioner misapplies expressio unius. Expresio unius does not apply "unless it is fair to suppose that [the legislature] considered the unnamed possibility and meant to say no to it." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (citing *United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 836 (2001)). "The canon depends on identifying a series of two or more terms or things that should be understood to go hand in hand, which is abridged in circumstances supporting a sensible inference that the term left out must have been meant to be excluded." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002) (citing EARL T. CRAWFORD, THE CONSTRUCTION OF STATUTES 337 (1940)). Both "statutory language suggesting exclusiveness" and an "essential extrastatutory ingredient of an expression-exclusion demonstration, [that] the series of terms from which an omission bespeaks a negative implication" are required before a court applies expresio unius. *See id.*

Statutory text is imperative to the applicability of expresio unius. *See id.* Petitioner points to no statutory text indicating that the Mississippi legislature intended, or even considered, Petitioner's interpretation of § 99-19-83 that it would

not apply to enhance Petitioner's sentence.[6] *Barnhart*, 537 U.S. at 168 (citing *United Dominion Indus., Inc.*, 532 U.S. at 836). There is neither statutory language "supporting exclusiveness" nor "supporting a sensible inference" of Petitioner's interpretation. *See Echazabal*, 536 U.S. at 81; MISS. CODE ANN. §§ 99-19-83 & 97-3-2. As explained *supra*, the statutory text is clear, unambiguous, and well-grounded in history. Application of expresio unius is unwarranted.

None of Petitioner's arguments on his fourth ground for relief merit federal habeas relief. This ground for relief should be dismissed.

### iv.    Ground one: due process and fair notice

Petitioner's first ground for relief relies solely on the arguments he lays out in grounds two through four. Pet'r's Br. [2] at 13, 16-30; Pet'r's Reply [15] at 25-26. Petitioner's claim is that "[t]he Mississippi Supreme Court's interpretation of [§ 99-19-83] violates three pillars of fair notice" and therefore violates Petitioner's due process rights. Pet'r's Br. [2] at 13, 16-30; Pet'r's Reply [15] at 25-26. The undersigned recommends dismissing this ground for relief for the reasons stated *supra*. In short, since the "three pillars of fair notice" do not support Petitioner's claim for relief, as explained above, Petitioner's fair notice claim should be dismissed.

---

[6] Petitioner neglects to cite any statutory text in his entire discussion of the Mississippi Supreme Court's alleged "unforeseeable and retroactive judicial expansion" of § 99-19-83. Pet'r's Br. [2] at 23-30. This is telling since Petitioner's fourth ground for relief is founded on statutory interpretation arguments. *Id.*

### III.    RECOMMENDATION

For the reasons stated above, the undersigned United States Magistrate Judge recommends dismissing Petitioner Allen M. Russell's Petition [1] for Writ of Habeas Corpus with prejudice.

### IV.    NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 29th day of May, 2024.

_s/ Bradley W. Rath_

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE